UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARVIN L.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C18-836 BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

This case presents whether the ALJ misevaluated the medical evidence while (**1**) assessing residual functional capacity ("RFC"); and (**2**) determining that "drug addiction and alcoholism" ("DAA") is a contributing factor material to the determination of disability.[1] The Court finds that the ALJ failed to support his conclusions with substantial evidence. The Court therefore **REVERSES** and **REMANDS** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 52 years old and applied for Supplemental Security Income, alleging disability as of the filing date of December 6, 2011. In 2014, the ALJ issued an unfavorable

---

[1] 20 C.F.R. §§ 404.1535, 416.935. In Social Security Ruling 13-2p, the agency notes that "[a]though the terms 'drug addiction' and 'alcoholism' are medically outdated, we continue to use the terms because they are used in the Act." 2013 WL 621536, at *3.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

decision, but on appeal before the Western District of Washington the parties stipulated to a remand. Hearings were rescheduled in 2016 and 2017 due to plaintiff's incarceration and an incomplete record. Plaintiff appeared and testified at a final hearing held on January 11, 2018. Tr. 776–843.

Utilizing the five-step disability evaluation process,[2] the ALJ determined at **step one** that plaintiff has not engaged in substantial gainful activity since the alleged onset date; at **step two** that plaintiff had the severe impairments of diabetes mellitus and peripheral neuropathy resulting therefrom, bipolar disorder, cocaine abuse, cannabis abuse, nicotine addiction, depressive disorder, and status post upper extremity derangements; and at **step three** that these impairments did not meet or equal the requirements of a listed impairment. Tr. 732–35. The ALJ determined that plaintiff has the **RFC** to perform light work with limitations: he requires a sit/stand option in the workplace; can have no contact with the public; is capable of working in proximity to, but not in coordination with, co-workers; can have occasional contact with supervisors; should engage in no stooping, squatting, crouching, crawling, kneeling, or climbing ramps, stairs, ropes, ladders, scaffolds; **would be off task at work 15 percent of the time**; **would be absent from work one-and-a-half days per month**; **could perform frequent handling with the upper extremities**; and would require the use of a cane or walker to walk, but not to stand, in the workplace. Tr. 735. The ALJ determined at **step four** that plaintiff had no past relevant work; and at **step five** that no jobs exist in significant numbers in the national economy that plaintiff can perform. Tr. 738–39. The ALJ therefore found plaintiff to be disabled if plaintiff's substance abuse disorder is considered. Tr. 739.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 2

Because the ALJ found plaintiff to be disabled and evidence of longstanding cocaine addiction exists, the ALJ the revisited the five-step evaluation to consider whether DAA is a contributing factor material to the determination of disability. The ALJ found that if plaintiff stopped substance use, most notably his use of cocaine, he would have the same RFC as before except **he would be off task at work 10 percent of the time but still meet the minimum production requirements of the job, and he would be absent from work one day per month**. Tr. 741. The ALJ noted again at **step four** that plaintiff had no past relevant work; and determined at **step five** that if plaintiff stopped substance use a significant number of jobs in the national economy exist that he could perform. Tr. 747. The ALJ therefore determined that plaintiff's substance abuse disorder is a contributing factor material to the determination of disability and that plaintiff is not disabled. *Id.* As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

Although plaintiff challenges all aspects of how the ALJ handled the medical evidence, there are two determinative issues: whether the ALJ harmfully erred with respect to (**1**) the RFC assessment that plaintiff (**a**) would be off task at work 15 percent of the time, (**b**) be absent from work one-and-a-half days per month, and (**c**) could perform frequent handling with the upper extremities; and (**2**) the DAA analysis that substance use is a contributing factor material to the determination of disability. The Court finds that the ALJ failed to support with substantial evidence: (**1**) the RFC assessment regarding (**a**) how frequently plaintiff would be off-task at work, (**b**) how frequently he would be absent from work, and (**c**) whether he could perform frequent handling with his dominant right hand; and (**2**) the DAA analysis that in the absence of plaintiff's substance use his severe impairments were no longer debilitating. The Court reverses

and remands so the ALJ may reassess RFC on those three questions, further develop the record (which may include supplemental medical examinations and consultation with a medical expert), and revisit the DAA analysis *de novo*. The Court rejects plaintiff's arguments that the ALJ improperly assessed light work with restrictions instead of sedentary work and failed to cite substantial evidence to support the conclusion that plaintiff needed an assistive device to walk but not to stand.

### 1. The RFC Assessment

The ALJ assessed plaintiff's RFC with uncanny precision: if plaintiff's cocaine use is considered, plaintiff is disabled because he would be off task 15 percent of the time; he would be absent from work one-and-a-half days per month; and he could perform frequent handling with his upper extremities, regardless of his documented history of neuropathy and multiple right-hand surgeries. If, however, the apparently featherweight onus of plaintiff's cocaine addiction is removed, plaintiff would not be disabled because his RFC would conform with the vocational expert's testimony regarding the bare minimum capabilities for employment: being off task only 10 percent of the time; being absent only one day per month; and still being able to perform frequent handling with the upper extremities. Tr. 840–41. That is, if plaintiff was less capable with respect to any one of those RFC limitations in the DAA analysis, plaintiff would be deemed disabled. The ALJ's curiously precise RFC assessment that leaves him just barely disabled when including his substance abuse disorder is not supported by substantial evidence.

First, the ALJ cited no medical evidence for the propositions that, considering substance abuse, plaintiff would be off task 15 percent of the time and would be absent from work one-and-a-half days per month. The treating and examining mental-health professionals—Charles Quinci, M.D., David Widlan, Ph.D., Robert Warwick, M.D., and Michael Kilbourne, M.H.P.—opined

that plaintiff would be unable to perform activities involving completing tasks and completing a normal workday/workweek but set forth no precise numbers for plaintiff being off task or absent from work.³ Tr. 489–500, 693, 694, 1097, 1117–19. The ALJ *rejected* the non-examining, state agency consultants' conclusions that plaintiff remained employable when substance use was considered and thus rejected their opinions regarding the extent to which plaintiff would be off task or absent from work. Tr. 736. Although the ALJ criticized the opinions of Dr. Quinci, Dr. Warwick, Dr. Widlan, and Mr. Kilbourne for being too brief or conclusory, or for not accounting for their stated observations regarding plaintiff's capabilities, he offered no explanation for how, in *agreeing* with the conclusion that plaintiff was disabled considering all of his severe impairments, the medical evidence demonstrated that plaintiff was limited to being off task 15 percent of the time and missing work one-and-a-half days per month. Moreover, the difference between the opinions of the medical professionals and that of the ALJ regarding plaintiff's workplace limitations is so vast, no reasonable inferences from the medical record could justify the ALJ's stated RFC.

Second, the ALJ cited no medical source for the proposition that plaintiff could perform frequent handling with his dominant right hand. Examining physician Patricia Boiko, M.D., opined that plaintiff was limited to occasional handling and manipulation based on his neuropathy and upper extremity fractures. Tr. 2256. The ALJ criticized Dr. Boiko's conclusions regarding plaintiff's physical RFC because her comments were too brief and "they made no

---

³ The opinion of a treating or examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1987). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An ALJ may reject the opinion of persons considered not acceptable medical sources, such as Mr. Kilbourne, by providing germane reasons. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

mention of the claimant's substance use and its effect upon his ability to function." Tr. 737. The ALJ did not, however, explain how plaintiff's substance abuse did or did not allow him to handle with his upper extremities with greater frequency. In fact, the ALJ himself concluded in the RFC and the DAA analysis that substance use had no impact at all on plaintiff's ability to handle with his upper extremities. The ALJ gave some weight to the non-examining, state-agency consultant Dr. Staley's opinion but rejected his conclusion that plaintiff was limited to occasional handling with his right hand due to right thumb surgery. Tr. 92, 746. Thus every physician cited by the ALJ—examining or non-examining—opined that plaintiff could perform only occasional handling with his right hand.

The ALJ concluded that plaintiff could frequently handle with both upper extremities because plaintiff had a "good response" to multiple surgeries on his right hand even though plaintiff continued to experience pain, had difficulty to extend or oppose his thumb, and surgery involved MP joint fusion of his right thumb with a local bone graft. Tr. 742–43. The ALJ also noted that "[t]here is very little evidence of the need for ongoing treatment after 2012" and "[t]here are also few complaints of ongoing pain or limitation in the hands after 2012." Tr. 743. The ALJ acknowledged that on April 14, 2016, "it was noted that the claimant's hand pain was stable, but not improving," but suggests that "his hand pain appeared to be related to pressure from cane use at that time." Tr. 743 (citing Tr. 1583). The ALJ failed, however, to address medical notes one-week later at the same clinic about a history of right thumb pain, that plaintiff "[r]ecently feels like bones are moving and causing him pain" though there was no recent trauma or injury, and "[o]n exam there is a bony protrusion medial to the MCP joint, unclear if chronic or acute." Tr. 1595, 1596. It is in no way self-evident from the medical record that plaintiff is capable of more than occasional handling. The ALJ thus improperly substituted his own medical

judgment for that of the medical professionals. *See, e.g.*, *Schultz v. Colvin*, 32 F. Supp. 3d 1047 (N.D. Cal. March 4, 2014).

In sum, the Commissioner argues that the ALJ cited specific and legitimate reasons for rejecting the uncontradicted medical opinions of examining physician Dr. Boiko and consulting physician Dr. Staley that plaintiff was limited to occasional handling with his right hand because those opinions inadequately explained their reasoning, did not account for plaintiff's substance abuse, and did not acknowledge plaintiff's medical improvement and lack of treatment/complaints about hand pain since 2012. The Court disagrees. No reasonable person would accept that Dr. Boiko's and Dr. Staley's 2016 opinions failed to account for plaintiff's history of hand pain when they explicitly set forth functional limitations based on his historical difficulties with handling objects due to multiple surgeries on his right hand. The ALJ provides no explanation for why it matters that Dr. Boiko did not reflect upon how cocaine use affected plaintiff's ability to handle objects given the ALJ himself found in the DAA analysis that drug use had no impact on this functional limitation. And the ALJ acknowledged that in 2016 plaintiff's hand pain was, at best, "stable, but not improving," Tr. 743 (citing Tr. 1583), while notes a week later from the same clinic confirmed structural abnormalities in the hand and both historical and ongoing hand pain, Tr. 1595, 1596. Thus, the only medical authority the ALJ cited for the conclusion that plaintiff could handle frequently with his right hand was himself. An ALJ's citation to himself as medical authority does not constitute a specific and legitimate reason for rejecting the opinion of examining physician Dr. Boiko or a specific reason for rejecting the opinion of consulting physician Dr. Staley.

The Court finds that the ALJ failed to support with substantial evidence his RFC assessment that, if cocaine use is considered, plaintiff would be off task 15 percent of the time;

he would be absent one-and-a-half days per month; and he could perform frequent handling with his upper extremities.

### 2. The DAA Analysis

Where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling symptoms remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. That is, the ALJ must first identify disability under the five-step procedure and then conduct a DAA analysis to determine whether substance abuse is material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747–48 (9th Cir. 2007). Plaintiff bears the burden of proving that DAA is not a contributing factor material to his disability. *Id.* at 748. Insufficient evidence as to the issue of materiality cannot satisfy a plaintiff's burden of proving his substance use is not a material factor. *Id.* 749–50. If a plaintiff cannot establish that his DAA is not material, then the ALJ repeats the five-step sequential evaluation process for determining whether plaintiff is disabled, absent the limiting effects of DAA. *Id.* at 747–50.

Here plaintiff argues that the ALJ harmfully erred by failing to support with substantial evidence the determination that DAA was material. The Court agrees.

As noted earlier, the ALJ failed to support with substantial evidence the RFC assessment that, when including substance abuse, plaintiff would be off task 15 percent of the time, would miss one-and-a-half days per week of work, and could frequently handle with his upper extremities. Similarly, during the DAA analysis the ALJ did not adequately support how, when

substance abuse is subtracted from the equation, plaintiff's limitations aligned perfectly with the VE-described bare minimum for employability of being off task 10 percent of the time, missing only one day per month of work, and still being able to frequently handle with his upper extremities.

It is undisputed that plaintiff has a longtime cocaine addiction, confirmed by his hearing testimony that until three weeks prior he generally used cocaine every two-to-three days. Tr. 797–98. Nonetheless, the ALJ cited no medical evidence that would demonstrate the extent to which, in the absence of substance abuse, plaintiff would be able to better stay on task and to reduce his absenteeism, or perform handling with his right hand on more than an occasional basis. That is, it was not enough for the ALJ to refer to the self-evident fact that the absence of cocaine dependency would enable plaintiff to be more functional because the question of degree of impairment is essential. The ALJ was required to support with substantial evidence that in the absence of substance use plaintiff could perform the RFC as assessed during the DAA analysis. The ALJ gave little weight to the December 2012 DSHS assessment by examining psychologist Dr. Widlan of debilitating mental functionality measured when plaintiff had been 22 months sober due to incarceration. Tr. 746. The ALJ did so because Dr. Widlan had assessed mostly marked limitations in basic work tasks, such as having marked limitations in awareness of normal hazards and communication with the public, even though "claimant has managed his own insulin injections for a long time, albeit with non-compliance, and has been homeless and living amongst the public." Tr. 746. The Court finds that it was unreasonable for the ALJ to infer that plaintiff demonstrated an increased mental *capacity* to work based on his documented *incapacity* to consistently manage a life-and-limb threatening diabetic condition and to arrange stable housing. The ALJ impermissibly cherry-picked the medical record, disregarded contrary

evidence, and concluded that the difference in plaintiff's employable and unemployable capacity to stay on task and limit absenteeism was based entirely on his substance use *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only portions [of a report] favorable to her position, while ignoring other parts, is improper."). No physician on the record has suggested that it is plaintiff's substance abuse that tips the scale between disability and non-disability when considering plaintiff's well-documented physical and mental limitations.

The Court finds that the ALJ harmfully erred during the DAA analysis by failing to support with substantial evidence the conclusion that if plaintiff stopped substance use he would be off task 10 percent of the time, miss only one day per month of work, and still frequently handle with both extremities.

**3. Other Issues**

Plaintiff argues that the ALJ inappropriately assessed an RFC of light work with restrictions, and should have assessed sedentary work, because light work does not contemplate the need to use an assistive device or a sit/stand option. Dkt. 18, at 4. The Court rejects this argument as legally unsupported. The VE testified that a claimant could perform light work given restrictions involving assistive devices and a sit/stand option. Tr. 835–37.

Plaintiff argues that the ALJ failed to support with substantial evidence the RFC assessment that plaintiff needed an assistive device to walk but not to stand. Dkt. 18, at 16. The Court rejects this argument. The ALJ reasonably inferred that plaintiff needed a cane or a walker to walk but not to stand by citing evidence of periods in which plaintiff either left behind or

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 10

refused prescribed assistive devices and yet was able to function without any indications that he was unable to stand. Tr. 745, 1581, 1583.

### 4. Remand for Further Administrative Proceedings

The Court remands for further administrative proceedings to revisit the sequential RFC assessment and the DAA evaluation because the record should be further developed regarding plaintiff's ability to stay on task, the amount of time he would be absent from work per month, his ability to handle with his right hand, and the extent to which substance use affects his functioning. *See Garrison*, 759 F.3d at 1022. The Court notes that it would be contrary to the ALJ's decision and this Order for the ALJ to determine on remand, in the absence of overwhelmingly persuasive supplemental medical testimony, that plaintiff has a higher RFC than was previously assessed. Moreover, on remand the ALJ's DAA analysis and review of the evidence, which may include supplemental medical examinations and consultation with a medical expert, is governed by **Social Security Ruling 13-2p**, which sets forth how a DAA analysis should be conducted in cases involving co-occurring mental disorders.[4] SSR 13-2p(7) provides:

> a. Many people with DAA have *co-occurring mental disorders*; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.

---

[4] Although Social Security Rulings do not have the force of law, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations. The courts will therefore defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984)).

  b. To support a finding that DAA is material, we *must* have evidence in the case record that *establishes* that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. *Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.*

  c. We may purchase a CE in a case involving a . . . co-occurring mental disorder(s). . . .

  d. We will find that DAA is *not* material . . . to the determination of disability and allow the claim *if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.*

SSR 13-2p (emphases added), *available at* 2013 WL 621536, at *9.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess RFC, revisit the DAA analysis *de novo*, and further develop the record, which may include supplemental medical examinations and consultation with a medical expert. In revisiting the DAA analysis, the ALJ should be guided by Social Security Ruling 13-2p. The Court does not disturb the ALJ's determination that, in accordance with the five-step sequential evaluation process, plaintiff is disabled when all impairments, including substance use, are considered.

DATED this 14th day of May, 2019.

                BRIAN A. TSUCHIDA
                Chief United States Magistrate Judge